**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **WOODROW CHAPMAN,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-14-CV-0062-KC** |
| | § | **EP-09-CR-2453-KC-3** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent**. | § | |

**ORDER**

On this day, the Court considered Petitioner Woodrow Chapman's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Motion"),[1] ECF No. 357.[2] By the Motion, Chapman challenges his criminal sentence on the ground that he received ineffective assistance of counsel. *See id*. For the following reasons, the Court **DENIES** the Motion.

**I.      BACKGROUND**

In March 2008, a confidential source, Victor Jimenez, began working with a Drug Enforcement Administration special agent, Ray Thompson.  The investigation focused on Bernardo Favela, a resident of El Paso, Texas, suspected of trafficking in cocaine and marijuana.

During the course of the investigation, Favela asked Jimenez, a commercial truck driver, if he could deliver fifteen kilograms of cocaine to a location near St. Louis, Missouri.  Jimenez agreed and picked up a box at Favela's El Paso home.  Jimenez delivered the box, which

---

[1] The Court refers to the pagination assigned to the Motion by the Court's electronic docketing system, rather than to the internal pagination assigned by Petitioner.

[2] For the purposes of this Order, all docket entries refer to the criminal case EP-09-CR-2453-KC (the "Case").

contained bundles of a powder with a gross weight of about seventeen kilograms that field-tested positive for cocaine, to Thompson.  Thompson kept the cocaine and arranged for the controlled delivery by DEA agents of "sham" cocaine to Jimenez when he arrived in Missouri.  Jimenez left El Paso that night with a legitimate load in his truck and drove to Missouri.  While on the road, Favela called Jimenez and told him to deliver the cocaine to "Mr. T" in Charleston, Missouri and provided Jimenez with a telephone number to call.

When Jimenez arrived in Missouri, DEA agents gave him a red duffel bag which contained bundles of the sham cocaine.  Jimenez took the red duffel bag to the Cheers Travel Center rest stop in Charleston where he called the telephone number provided to him by Favela.  There, Jimenez had a number of conversations with Favela as well as conversations with another man about the delivery of the cocaine.  During the conversations, Jimenez discussed the location of the transfer of the cocaine, the exchange of money, and the other people involved.  At trial, the government introduced evidence that this other man in these conversations was Chapman.

As DEA agents watched, Jimenez placed the red duffel bag in a blue van and received, in exchange, a black duffel bag from the back seat of a blue Cadillac located next to the blue van.  The black duffel bag contained $16,000.  The DEA agents contacted a local law enforcement agency and asked for a traffic stop of the blue van and a blue Cadillac.  A local officer observed and gave chase to the vehicles down a country highway until the van ran off the side of the road and overturned.  The driver of the van exited the can and entered the passenger seat of the Cadillac, which continued for 150 yards before stopping.  The officer took the drivers of the van and Cadillac into custody near the rollover site without incident.  The red duffel bag was recovered from the blue van with its fifteen bundles of sham cocaine.

On September 2, 2009, a grand jury returned an indictment charging Chapman with

conspiracy to possess five kilograms or more of cocaine with intent to distribute, and possession of five kilograms or more of cocaine intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846. *See* Original Indictment, ECF No. 21, at 1-2, 4. On January 29, 2010, Chapman filed a motion seeking to substitute retained counsel, which the Court granted on February 1, 2010. Mot. to Substitute, ECF No. 131.

On May 26, 2010, a grand jury charged Chapman in a superseding indictment (the "Superseding Indictment"), ECF No. 161, with conspiracy to possess five or more kilograms of cocaine with intent to distribute, and attempted possession of five or more kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846. *See* Superseding Indictment 1-2.

The Court held a jury trial of Chapman, along with three of his co-defendants, on June 4-10, 2010. *See* ECF Nos. 182, 188, 198, 201, 205.  On June 10, 2010, the jury unanimously found Chapman guilty of Conspiracy to Possess a Controlled Substance with Intent to Distribute, and not guilty of Attempted Possession. Jury Verdict, ECF No. 208, at 1-2. Further, the jury did not find that the conspiracy involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine. *Id.*

Prior to Chapman's sentencing, a United States Probation Officer prepared a presentence investigation report (the "PSR"), ECF No. 245,[3] in the Case. The PSR recommended that the Court hold Petitioner responsible for a total of fifteen kilograms of cocaine when calculating Petitioner's guideline sentence. *See* PSR 6-8, 10.  The PSR was equivocal with regard to an adjustment for Chapman's role in the offense.  *Id.* at 10.

---

[3] The Court refers to the pagination assigned the PSR by the Court's electronic docketing system, rather than to the internal pagination assigned by the United States Probation Officer.

The Court held a sentencing hearing in the Case on January 5, 2011. *See* ECF No. 285; Sentencing Hr'g Tr., Jan. 5, 2011, ECF No. 295. The Court sentenced Petitioner to a term of 188 months of imprisonment on the conspiracy count. *See* J. & Commitment, ECF No. 286, at 2. The Court also imposed a three-year term of supervised release, a $100.00 assessment, and a $2,000.00 fine. *See id.* at 3-6. In doing so, the Court imposed a sentence consonant with the PSR's recommendation that Chapman be held responsible for a total of fifteen kilograms of cocaine. *See* Sentencing Hr'g Tr. 21-22.  The Court further determined that Chapman's involvement in the conspiracy did not warrant an aggravating role adjustment, despite the government's arguments otherwise. *Id.* at 12-22.

On January 14, 2011, Trial Counsel filed a Notice of Appeal on Chapman's behalf. *See* ECF No. 288.  On October 26, 2012, the United States Court of Appeals for the Fifth Circuit affirmed this Court's judgment. *See United States v. Thomas*, 690 F.3d 358, 364, 376.  The Supreme Court of the United States denied Chapman's petition for a writ of certiorari on April 1, 2013. *See Chapman v. United States*, --- U.S. ----, 133 S.Ct. 1743 (2013).

Chapman filed the Motion on February 14, 2014. *See* Mot. The government then filed its first response on April 10, 2014, ECF No. 368. In its first response, the government argued that the Motion was time-barred, under the mistaken belief that Chapman did not file a petition for certiorari with the United States Supreme Court.  Resp. 4.  Chapman filed his first reply on April 23, 2014, explaining that he had, in fact, filed a petition for certiorari, and, therefore, his Motion was timely.  Reply 2, ECF No. 369.  Upon learning that the Motion was not time-barred, the government filed its Amended Response ("Amended Response") on June 11, 2014, ECF No. 378.  On July 21, 2014, Chapman filed his Reply, ECF No. 398.

4

## II.    DISCUSSION

### A.    Standard

28 U.S.C. § 2255 provides that

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

After a petitioner has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255, the petitioner must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231

5

(5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a petitioner must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589. If the petitioner does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To obtain relief on an ineffective assistance of counsel claim, a petitioner must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot

6

be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

The test's performance prong centers on whether counsel's assistance was reasonable in light of all the circumstances at the time of counsel's conduct. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). In order to obtain relief, a petitioner must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A deficiency in counsel's performance, even if professionally unreasonable, does not necessarily equal ineffective assistance of counsel; the petitioner must also demonstrate actual prejudice. *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."). The test's prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because Petitioner appears pro se, the Motion is "entitled to a liberal construction that includes all reasonable inferences which can be drawn from" it. *United States v. Peralta-Ramirez*, Criminal No. H-04-0150-06, Civil Action No. H-07-4582, 2008 WL 4630369, at *2 (S.D. Tex. Oct. 16, 2008) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997)). However, even a pro se litigant must provide sufficient facts in support of his or her claims; "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *accord Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### B.    Analysis

Chapman alleges that Trial Counsel rendered ineffective assistance at trial in six distinct respects. The Court considers each of Chapman's challenges in turn.

### 1.    Trial Counsel's failure to seek dismissal of the Indictment for violations of the Speedy Trial Act and the constitutional right to a speedy trial

In his first claim, Chapman contends his attorney was ineffective for failing to raise with the Court that Chapman's right to a speedy trial had been violated.  Mot. 22.  In support of this contention, Chapman asserts that his initial appearance, which occurred on October 15, 2009, started the Speedy Trial clock.  *Id.*  According to Chapman. jury selection in his case did not begin until 231 days later on June 4, 2010.  *Id.* at 23. Chapman explains that though there were thirty-four events that started and stopped the Speedy Trial clock, only three carried the requisite "Ends of Justice" findings.  *Id.* at 22.  Therefore Chapman argues that "his attorney, without

consultation or discussion, impermissibly waived his rights under the Speedy Trial Act by fist [sic] permitting delay and then by failing to timely move to dismiss the indictment." *Id.* at 23.

The Speedy Trial Act requires a criminal defendant's trial to begin within seventy days of his indictment or initial appearance. 18 U.S.C. § 3161(c)(1). Failure to meet the deadlines may result in dismissal of the charges against him. *Id.* § 3162(a)(2). Despite the strict deadline, the Act "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006) (citing 18 U.S.C. § 3161(h)). Specifically, the Act excludes any "period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). Further, the Act excludes any "period of delay resulting from other proceedings concerning the defendant, including . . . delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *Id.* § 3161(h)(1)(H). Additionally, the Act excludes any "period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel, or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). Further, the Act excludes any "period of delay resulting from the absence or unavailability of the defendant." *Id.* § 3161(h)(3)(A). Finally, the Act provides for the exclusion from the seventy-day speedy trial period a "reasonable period of delay when the

9

defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." *Id.* § 3161(h)(6).  In a multi-defendant case such as this one, the Speedy Trial Act clock does not begin to run until the last codefendant makes his initial appearance in court.  *See United States v. Harris*, 566 F.3d 422, 428 (5th Cir. 2009) (citing *United States v. Franklin*, 148 F.3d 451, 454 (5th Cir. 1998)).

Here, Chapman's codefendants Henry Davis, Chedowry Thomas and Dontay Clark had their initial appearance on November 3, 2009.  Minute Entry, November 3, 2009; *see also* ECF Nos. 94-96.  Thus, the Speedy Trial clock for Chapman and his codefendants did not commence until November 3, 2009.  *See Harris*, 566 F.3d at 428.

On November 19, 2009, the Court issued an order granting defense counsel's oral motion for a continuance to conduct further investigation in preparation of the defense.  November 19, 2009, Order, ECF No. 105.  The Court found that "the interests of justice outweigh the interests of Defendant and the public in a speedy trial." *Id.*  The Court, therefore, held that "the time from November 18, 2009 through December 17, 2009, [was] excludable time within the meaning of the Speedy Trial Act, 18 U.S.C. § 3161." *Id.*  On December 18, 2009, the Court issued an order setting Chapman's case for jury selection and trial on January 22, 2010.  December 18, 2009, Order, ECF No. 113.  The Order also specified that the time "from December 17, 2009 through January 22, 2010, is excludable time within the meaning of the Speedy Trial Act, 18 U.S.C. § 3161[,]" and based its determination on the interests of justice.  *Id.*  On January 20, 2010, the Court entered another order granting a continuance of the jury trial until April 23, 2010, and specified that the time "from January 20, 2010, through April 23, 2010, is excludable time within the meaning of the Speedy Trial Act, 18 U.S.C. § 3161."  January 20, 2010, Order, ECF No. 121.  During a status conference on April 16, 2010, the attorney for one of Chapman's

co-defendants asked for a continuance to allow time to review discovery.  Minute Entry, ECF

No. 149.  The Court granted the request and stated on the record:

> I'm going to grant the continuance.  I believe the ends of justice are served by
> granting the continuance.  So I will set jury selection June 4th.  Probably opening
> statements, you may, on behalf of the Government, have a witness available if we
> decide to start there.  And the trial will start June 7th for that week.

April 16, 2010, Status Conference Tr. 9, ECF No. 299.

The requirements of the Act are met when "a district court enters on the record . . . the

necessary findings to support an ends-of-justice continuance.   The only requirements for such an

order are that [it] indicate when the motion was granted, and that the reasons stated . . . be fairly

understood as being those that actually motivated the court at the time it granted the

continuance."  *United States v. Bieganowski*, 313 F. 3d 264, 283 (5th Cir. 2002) (citing 18

U.S.C. § 3161).

Based on the foregoing, the time period from November 18, 2009, through June 4, 2010,

was excludable for Speedy Trial Act purposes.  *See id.*  Therefore, the speedy trial clock ran for

Chapman only from November 3, 2009, to November 18, 2009.  Only fifteen days of the

seventy-day Speedy Trial period lapsed; there was no Speedy Trial violation. *See Bieganowski*,

313 F.3d at 283; *Zedner*, 547 U.S. at 497; 18 U.S.C. § 3161(h).  It is well established that the

failure to make a frivolous or meritless objection cannot constitute ineffective assistance of

counsel.  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections

is not ineffective lawyering; it is the very opposite.").  Accordingly, his attorney could not have

been ineffective for not raising a Speedy Trial violation.  *See id.*

Chapman also asserts that his Sixth Amendment right to a speedy trial has been violated.

Mot. 20, 23-24.  The Sixth Amendment of the Constitution does indeed afford Chapman the right

to a speedy trial.  *See* U.S. Const. amend VI ("In all criminal prosecutions, the accused shall

11

enjoy the right to a speedy and public trial . . . .").   In *Barker v. Wingo*, 407 U.S. 514 (1972), the

Supreme Court set out a four-factor test to determine whether a defendant received a speedy trial

within the meaning of the Sixth Amendment.  *See Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir.

2000) (citing *Barker*, 407 U.S. at 530). These factors are: "(1) the length of the delay; (2) the

reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the

prejudice to the defendant."  *See Barker*, 407 U.S. at 530.  As an initial matter, though, the

defendant must show that the length of the delay is presumptively prejudicial. *Id.*; *United States

v. Green*, 508 F.3d 195, 202. "Until there is some delay which is presumptively prejudicial, there

is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at

530.

The Fifth Circuit has found that a "delay of less than one year will rarely qualify as

'presumptively prejudicial' for purposes of triggering the *Barker* inquiry.  *Green*, 508 F.3d at

202 (citing *Cowart v. Hargett*, 16 F.3d 642, 646 (5th Cir. 1994)).   "Absent extreme prejudice or

a showing of willfulness by the prosecution to delay the trial in order to hamper the defense, a

delay of less than one year is not sufficient to trigger an examination of the *Barker* factors."

*Cowart*. 16 F.3d at 647.

In this case, Chapman was arrested on September 16, 2009.  Notice of Arrest, ECF No.

67.  His trial commenced on June 4, 2010, less than nine months later.  *See* Minute Entry, ECF

No. 182.  Because the period of time between Chapman's arrest and his trial was less than one

year, without a showing of extreme prejudice or an attempt by the prosecution to impede the

defense, there is no Sixth Amendment violation.  *See Cowart*, 16 F.3d at 647.  Chapman has not

identified any such extreme prejudice or improper conduct on the part of the government.

Indeed, there was none. All requests for continuances were made either by Defendant's counsel

or that of his codefendants, and not by the government.   Accordingly, Chapman has failed to show that the less than nine-month delay between his arrest and trial was presumptively prejudicial. *See Barker*, 407 U.S. at 530; *Green*, 508 F.3d at 202; *Cowart*, 16 F.3d at 647.   As Chapman is unable to satisfy this threshold requirement for stating a violation of his Sixth Amendment right to a speedy trial, his counsel could not have been ineffective for failing to raise any such matter. *See Clark*, 19 F.3d at 966.  This claim for ineffective assistance fails as well.

> ### 2.    Trial Counsel's failure to consult with Chapman, failure to apprise him of a plea deal, and failure to apprise him of a plea of nolo contendere

Chapman's claims on the failure to consult front are vague. He appears to argue that his attorney failed to consult with him on matters which would require consultation such as trial strategy, and failed to follow his instructions on matters that required counsel to follow his instructions. Mot. 24-25; Reply 7.

It is well established that conclusory allegations of ineffectiveness are insufficient to demonstrate deficient performance or actual prejudice. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence). The Fifth Circuit has held repeatedly that a petitioner's bare allegations are insufficient to state a claim on habeas corpus review and do not warrant relief.  *See, e.g., Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a

13

claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim). Chapman has alleged only broad claims regarding his counsel's failure to consult and failure to do what she was required to do. Such conclusory allegations, without more, are insufficient. *See Day*, 566 F.3d at 540-41; *Collier*, 300 F.3d at 587. Because Chapman has failed to offer any specific facts in support of this allegation, nor even explain what exactly his counsel failed to do, he fails to state a valid ineffective assistance claim.

Chapman does, however, make a specific mention within this section of his Motion that counsel failed to consult with him regarding the possibility of his arranging a guilty plea or plea of nolo contendere with the government. Mot. 26-27. Chapman's claim seems to be that counsel did not discuss the possibility of a plea bargain with him or properly guide him through the process. *See id.*

Chapman states:

> Over repeated objection by Chapman, his attorney essentially put on the defense she chose instead of discussing any strategy with him such as facilitating a plea of guilty or nolo contendere. In fact, it was not until the day before trial that his attorney even mentioned a plea. . . .
>
> In a pair of cases decided on March 21, 2012, the Supreme Court determined that where counsel's ineffective advice led to a plea offers rejection and where the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea would have been accepted and the conviction or sentence or both would have been less severe. See, *Lafler v. Cooper*, 132 S.Ct. 1376 (2012). In the companion case, the same majority held that to show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance the defendant must show a reasonable probability that he would have accepted the plea and it would have been entered without prosecution cancellation or the court rejecting it. *See, Missouri v. Frye*, 132 S.Ct. 1399 (2012). Here, Chapman submits that the very same duty was owed to him by his attorney. Most assuredly, he would have been

14

able to make an informed decision whether to continue in the plea process or
freely elect to proceed to trial. Yet, this decision was made for him by the simple
lack of disclosure and discussion.

Mot. 24, 27.

In her affidavit, counsel advises otherwise when she explains that she discussed the
government's offer of a global plea bargain involving Chapman and all of his codefendants.  Aff.
5, ECF No. 378-1.  Moreover, counsel states that she raised the possibility of a global plea deal
with Chapman on more than one occasion during the pendency of the case, and that Chapman
was aware of the possibility of a reduced sentence for cooperating with the government.  *Id.* at 6.

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the
prosecution to accept a plea on terms and conditions that may be favorable to the accused."
*Missouri v. Frye*, --- U.S. ----, 132 S.Ct. 1399, 1408 (2012). To prove ineffective assistance,
however, a petitioner must not only show that counsel failed to disclose a plea offer, he must also
show prejudice.  *Id.* at 1409-10.  To show prejudice in this instance, the petitioner must show:

> a 'reasonable probability' that (1) he would have accepted the plea offer; (2) the
> plea would have been entered without the prosecution canceling it or the trial
> court refusing to accept it; and, (3) 'the end result of the criminal process would
> have been more favorable by reason of a plea to a lesser charge or a sentence of
> less prison time.'

*Layer v. Stephens,* Civ. No. 7:13-CV-035-O-KA, 2015 WL 1006068, at *11 (N.D. Tex. Mar. 4,
2015) (quoting *Frye*, 132 S.Ct. at 1409)).

Furthermore, when a petitioner alleges ineffective assistance where a plea offer has lapsed or the
offer has been rejected due to counsel's deficient performance, he must show prejudice as well.
*Frye*, 132 S.Ct at 1409.  Similar to the showing of prejudice for a failure to communicate claim,
petitioners must demonstrate:

> a reasonable probability they would have accepted the earlier plea offer had they
> been afforded effective assistance of counsel.  [Petitioners] must also demonstrate
> a reasonable probability the plea would have been entered without the prosecution
> canceling it or the trial court refusing to accept it . . . .  To establish prejudice in

this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.*; *Lafler v. Cooper*, --- U.S. ----, 132 S.Ct. 1376, 1385 (2012).

In this case, Chapman does not aver that his counsel failed to communicate a plea deal to him. *See* Mot. 24, 27; *cf. Frye*, 132 S.Ct. at 1408. Rather, he alleges that counsel only communicated the existence of the government's plea offer the day before trial. Mot. 25. Even crediting Chapman's version of the facts, his claim fails because he has not shown or even stated how this alleged error on the part of counsel prejudiced him in his particular case. *See Frye*, 132 S.Ct. 1409-10; *Strickland*, 466 U.S. at 694. Chapman does not claim that he would have accepted the plea bargain that was offered to him, or any plea bargain for that matter; he does not show that the Court would have accepted any such plea; nor does he show how the outcome would have been more favorable for him. *See Frye*, 132 S.Ct. at 1409; *Lafler*, 132 S.Ct. at 1385; *Layer*, 2015 WL 1006068, at *11.

To the extent Chapman argues that his counsel did not meet with him sufficiently to explore a plea deal, "b]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) (citing *Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir. 1979)). *Accord United States v. Effron*, Criminal Action No. 08–71, 2013 WL 56135, at *4 (E.D. La. Jan. 3, 2013) (applying *Murray* in context of § 2255 case); *Malone v. United States*, Civil Action No. 5:08–CV–80, 2010 WL 56000, at *4 (E.D. Tex. Jan 5, 2010) (same); *Roman-Salgado v. United States*, Civil Action No. L–09–56, Criminal No. L–06–CR–1222–1, 2009 WL 5195957, at *3 (S.D. Tex. Dec. 21, 2009) (same); *Perez-Herrera v. United States*, Nos. EP–06–CA–0357–DB, EP–05–CR–1539–DB, 2009 WL 510957, at *4 (W.D. Tex. Jan. 16, 2009) (same); *United States*

*v. Harris*, Criminal No. 04–30025–01, 2008 WL 5157923, at *8 (W.D. La. Oct. 28, 2008)
(same). "While counsel must devote sufficient time to ensure an adequate defense in order to
render effective assistance . . . time spent in preparation is only one of the elements to be
considered and the totality of facts may not be over-ridden by a judicial stop watch." *Perez-
Herrera*, 2009 WL 510957, at *4 (quoting *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974))
(internal quotation marks omitted). For a petitioner to prevail on a claim that his or her counsel
rendered ineffective assistance by failing to adequately consult with him or her, the petitioner
must show "how more frequent meetings, or meetings longer in duration, with his [or her]
attorney would have changed the nature of the proceedings in his [or her] case." *Delgado v.
United States*, Nos. EP–10–CV–355–PRM, EP–08–CR–460–PRM–7, 2011 WL 11741276, at *3
(W.D. Tex. Sept. 30, 2011). *Accord Perez-Herrera*, 2009 WL 510957, at *4; *Harris*, 2008 WL
5157923, at *8. Chapman makes no showing how any more frequent or longer meetings with
counsel would have changed the nature of the proceedings against him. The claim fails for this
additional reason. *See Delgado*, 2011 WL 11741276, at *3.

### 3. Trial Counsel's failure to adequately investigate and interview witnesses, as well as to investigate facts and circumstances

Chapman next asserts that his counsel rendered ineffective assistance by failing to
interview "ANY defense witnesses including [Chapman's] employer and secretary who could
have corroborated that Chapman was in Kalamazoo, Michigan on November 25, 2008, instead of
coordinating a drug transaction at the Cheers Travel Center in Charleston, Missouri." Mot. 27;
Reply 7-8. Chapman also argues that had his attorney done any investigation of his case, she
would have discovered "relevant video evidence from his job that would have corroborated
pertinent defense testimony . . . and shown Chapman was at his job on November 25, 2008."

17

Mot. 30. He also explains that such testimony would undermine the government's key witness

against him, Nicholas Bobo. *Id.* at 28-29. Chapman also complains that counsel failed to seek

admission at trial of "push-talk phone records which would not have reflected the same call

times or duration as the government offered at trial." *Id.*

A petitioner who challenges his or her counsel's failure to procure a witness's testimony

at trial faces a formidable burden:

> Complaints of uncalled witnesses are not favored, because the presentation of
> testimonial evidence is a matter of trial strategy and because allegations of what a
> witness would have testified are largely speculative." Where the only evidence of
> an uncalled witness's testimony is from a § 2255 movant, the court views claims
> of ineffective assistance of counsel with "great caution."

*United States v. Jackson*, Nos. 4:12-CV-715-A, 4:07-CR-03-A, 2013 WL 1363905, at *2 (N.D.
Tex. Apr. 4, 2013) (internal citations omitted) (quoting *Schwander v. Blackburn*, 750 F.2d 494,
500 (5th Cir. 1985)).

To succeed on such a claim, the petitioner must (1) "name the witness;" (2) "demonstrate that the

witness was able to testify and would have done so;" (3) "set out the content of the witness's

proposed testimony;" and (4) "show that the testimony would have been favorable to a particular

defense." *Day*, 566 F.3d at 538. The petitioner must also satisfy the traditional *Strickland*

elements of deficiency and prejudice. *See United States v. Osamor*, Cr. No. H–01–764, C.A. No.

H–09–741, 2014 WL 1028395, at *10 (S.D. Tex. Mar. 16, 2014).

First, Chapman's claim that his attorney failed to interview any defense witnesses fails

because he does not identify these individuals by name. *See Day*, 566 F.3d at 538. However,

Chapman does claim that counsel should have called his employer and secretary to testify. Mot.

28-29 ; Reply 7-8. Assuming that this reference to "employer and secretary" identifies

individuals sufficiently to meet the first prong of the *Day* test, Chapman's claim still fails

because he does not demonstrate that these witnesses were available to testify or that they would

have done so.  *See Day*, 566 F.3d at 538.  Further, Chapman's claim also fails because he does not state what these witnesses would have said had they testified, nor how these statements would be favorable to his defense.  *See id.*  Moreover, even assuming that these witnesses would have been available, and would have testified that Chapman was at work in Michigan when the drug transaction took place, and not at the Cheers Travel Center in Missouri, the claim still fails because Chapman has not shown the requisite prejudice to set out an ineffective assistance of counsel claim.  *See Osamor*, 2014 WL 1028395, at *10.

To be found guilty of the drug conspiracy of which Chapman was convicted, the government needed to prove that there was an agreement between two or more people to violate narcotics laws, that Chapman had knowledge of the agreement, and that he participated in the conspiracy voluntarily.  *See United States v. Patino-Prado*, 533 F.3d 304, 309 (5th Cir. 2008) (citing *United States v. Valdez*, 453 F.3d 252, 256-57 (5th Cir. 2006)).  The Cheers Travel Center in Missouri was not the locus of the conspiracy, and Chapman's presence there was not necessary for a conviction.  *See Thomas*, 690 F.3d at 369.  Whether Chapman was located in Michigan or Missouri at the time of the transfer of drugs and money is of small moment in this case.

The theory of the government's case against Chapman for the drug conspiracy count was premised upon Chapman's remote coordination of the movement of the drugs and money that ended up at the Cheers Travel Center in Missouri.  *See id.* at 368-69.  The primary evidence in support of this theory was several recorded telephone conversations between Chapman and Jimenez. *See id.* at 365, 368-69, 375.  Bobo identified Chapman's voice in recorded conversations with Jimenez explaining to Jimenez the logistics of the transfer of the drugs and the exchange of money at the Cheers Travel Center, and also explaining to Jimenez the various

19

individuals involved in the conspiracy. *Id.* The government's case did not turn on Chapman's physical presence in Missouri, nor did the law require it. *See Patino-Prado*, 533 F.3d at 309 Because the government never contended, nor sought to prove, that Chapman was physically presence in Missouri, the uncalled 'employer and secretary" in Michigan that Chapman mentions would not have changed the outcome of the trial; and, for this additional reason, the ineffective assistance claim founded on uncalled witnesses must fail. *See Strickland*, 466 U.S. at 691-94; *See Osamor*, 2014 WL 1028395, at *10.

Chapman also believes that his counsel was ineffective because she did not sufficiently investigate the case. Mot. 30. Had she done so, he explains, she would have discovered "relevant video evidence from his job that would have corroborated pertinent defense testimony . . . and shown Chapman was at his job on November 25, 2008." *Id.* He also explains such testimony would undermine the government's key witness against him, Nicholas Bobo. *Id.* at 28-29. Chapman also complains that counsel failed to seek admission at trial of "push-talk phone records which would not have reflected the same call times or duration as the government offered at trial." *Id.* at 30.

Chapman runs into the same trouble with his challenge to the assistance of counsel regarding the documentary and video evidence as he did with the claims of uncalled witnesses. "Adequate investigation is a requisite of effective assistance." *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982) (citing *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir. 1979); *Gaines v. Hopper*, 575 F.2d 1147 (5th Cir. 1978)). To establish an ineffective assistance claim predicated on counsel's failure to investigate, the petitioner "must show both a failure to investigate adequately and prejudice arising from that failure." *Id.* (citing *Washington v. Watkins*, 655 F.2d 1346, 1362 & n.32 (5th Cir. 1981)). "A defendant who alleges a failure to investigate on the part

of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted).  Without such a showing, "'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'" *Id.* (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)).  The Fifth Circuit has advised: "We must be particularly wary of "argument[s] [that] essentially come[ ] down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing."  *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (quoting *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir.1999)) (alterations in original).

In this instance, Chapman fails to explain how this evidence would have been material to the outcome of his case.  For this reason, the claim fails.  *See Green*, 882 F.2d at 1003 (citations omitted).  And, as discussed above, the government never set out to prove that Chapman was in Missouri at the time of the arrest of his coconspirators; the government was not required to in order to prove his guilt, and that was not the theory of the government's case.  This Court is loath to second guess Chapman's counsel on this issue. *See Dowthitt*, 230 F.3d at 743.   If these materials exist, as Chapman avers, the phone records and video recordings would presumably show that Chapman was in Michigan, and not Missouri, at the time of the drug transaction.  Because Chapman was charged with, and convicted of a conspiracy count, that Chapman was not located in Missouri is not material to his conspiracy conviction, *see Patino-Prado*, 533 F.3d at 309, and his counsel's failure to investigate this evidence is not ineffective assistance.  *See Green*, 882 F.2d at 1003 (citations omitted).

21

4.    **Trial Counsel's failure to argue for a downward variance for minor role at sentencing**

Chapman claims that Trial Counsel rendered ineffective assistance by failing to seek a downward variance at sentencing pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2 that Chapman was only a minor participant in the conspiracy. Mot.30-31.

Section 3B1.2 of the U.S.S.G "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A).  According to the commentary of this provision of the Guidelines, a minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.*. § 3B1.2 cmt. n.5. "It is not enough that a defendant does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity." *Thomas*, 690 F.3d at 375-76 (quoting *United States v. McElwee*, 646 F.3d 328, 346 (5th Cir.2011)).

Chapman's counsel was not ineffective for not arguing for a downward variance for minor participant because Chapman would not have been entitled to it.  The government presented evidence at trial that Chapman and Jimenez had a number of telephone conversations regarding the delivery of the cocaine and the money.  *Thomas*, 690 F.3d at 365. Specifically Chapman discussed with Jimenez whether Jimenez would be getting money, and Chapman confirmed that Jimenez would be able to "get something" for the "burritos," which Jimenez testified referred to the cocaine.  *Id.* at 368.   Chapman also told Jimenez that he was talking to Jimenez's "people down that way," and, Chapman further acknowledged that Jimenez was attempting to deliver the fifteen "burritos." *Id.*  Chapman directed Jimenez to "walk out and put it in the blue van." *Id.*  Overall, during the conversations, Jimenez discussed the logistics of the

22

transfer of the drugs, the exchange of money, and the people involved.  *Id.* at 365, 375.

With evidence showing that Chapman was directing Jimenez as to the location of the transfer of the drugs and money and other logistical considerations, Chapman was not "peripheral to the advancement of the criminal activity."  *See id.* at 369, 375-76.  Because Chapman would not have qualified for a minor role adjustment under these facts, his counsel could not have been ineffective for failing to raise this issue.  *See  Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir.1995) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990)) ("Counsel cannot be deficient for failing to press a frivolous point.").

In actuality, Chapman's counsel zealously advocated on his behalf at sentencing.  Though counsel did not press the meritless request for minor participant that Chapman complains about, counsel did vigorously challenge the finding that Chapman be held accountable for the fifteen kilograms of cocaine recommended by the PSR.  January 5, 2011, Sentencing Hr'g Tr. 5, 8-10, ECF No. 295.  Though unsuccessful in the end, counsel pressed the Court that Chapman be held accountable only for the twenty-two grams of cocaine.  *Id.* Counsel also strenuously objected to the government's request for an aggravating role adjustment for Chapman.  *Id.* at 13-18.  And, on this issue, counsel prevailed when the Court denied the government's request for aggravating role adjustment.  *Id.* at 21-22.  Because there was no merit to seeking a minor role adjustment, and because counsel advocated zealously for Defendant at sentencing, this ineffective assistance claim fails.  *See Sones*, 61 F.3d at 415; *Clark*, 19 F.3d at 966.

### 5.   Trial Counsel's alleged failure to call codefendant as a witness at sentencing

Chapman claims that Trial Counsel rendered ineffective assistance because she failed to introduce the testimony of co-defendant Chedowry Thomas at sentencing.  Mot. 32.  Chapman

believes that had Thomas testified, or submitted a sealed affidavit, Thomas could have clarified a statement he had made to a law enforcement officer that Chapman was the owner of the fifteen kilograms of cocaine at issue in the conspiracy.  *Id.*  With this evidence, Chapman explains that he would only have been held responsible for 22 grams of cocaine, and not the entire fifteen kilograms.  *Id.*

This claim fails because counsel did indeed attempt to secure Thomas's testimony at sentencing.  That counsel was unable to do so because Thomas elected not to testify, and because the Court denied Chapman's request, is no fault of counsel's.  The record reveals that counsel had requested, and was granted, a continuance for the sentencing hearing while she worked to arrange Thomas's testimony.  January 5, 2011, Sentencing H'rg Tr. 2.  Counsel sought a second continuance at the time of the sentencing in an attempt to again secure Thomas's testimony.  *Id.* In the end, under advice of his own counsel, Thomas decided not to testify at Chapman's sentencing.  *Id.* at 4.  Furthermore, the Court denied Chapman's request that Thomas testify.  *Id.* at 6.  Counsel worked diligently to secure this testimony: That Thomas chose not to testify, and that the Court decided not to order him to, in no way demonstrates ineffective assistance.  Any allegation that counsel was ineffective for failing to secure Thomas's testimony is undermined by the record, and is, therefore, meritless.  This unfounded claim is frivolous and cannot amount to ineffective assistance.  *See Clark*, 19 F.3d at 966.

### 6.    Appellate Counsel's failure to adequately review the record and raise any of the above-noted issues on appeal

Chapman's final claim is based upon his attorney's performance on appeal.  He appears to argue that his attorney should have done more to investigate the law and facts on appeal than she actually did.  Mot. 33-34; Reply 11-12.  The only specific claim here is that counsel was

"constitutionally deficient on direct appeal for failing to ascertain any or all of his claimed errors."  Mot. 35.

The Supreme Court's analysis in *Strickland* applies with equal force to claims of ineffective assistance of counsel on appeal. *See Amador v. Quarterman*, 458 F.3d 397, 411 (5th Cir. 2006) (citing *Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir.1999)); *see also Smith v. Robbins*, 528 U.S. 259, 285 (noting that a court applies the standard set forth in *Strickland* for claims of ineffective assistance of counsel on appeal). Further, the Fifth Circuit has held that when a court does not "find prejudice from the trial error, by extension, [it] cannot find prejudice from an appellate error predicated on the same issue." *Mayabb*, 168 F.3d at 869 (citing *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir.1984)).

Here the Court has found that counsel did not make any errors with regard to the claims that Chapman has asserted in the Motion, nor did counsel's actions in defending him prejudice him in any way.  Accordingly, because Chapman has not shown prejudice from counsel's assistance, he cannot show that his appellate counsel provided ineffective assistance. *See Mayabb*, 168 F.3d at 869.

Moreover, Chapman's claims on this appellate front are vague and conclusory.  The Fifth Circuit has been clear that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983)). "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial, we can find no merit to these claims." *Id.* (quoting *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir.1992)) (alterations omitted).  Chapman's undifferentiated claims of ineffective assistance of counsel on appeal must also fail.  *See id.*;

25

*Day*, 566 F.3d at 540-41.

### D.   Evidentiary Hearing

Chapman requests an evidentiary hearing on the issues posed by the Motion. *See* Mot. 24;

Reply 13.  28 U.S.C. § 2255(b) provides:

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b).

For the reasons discussed above, the Motion, the Reply, and the files and records of the Case

conclusively demonstrate that Chapman is entitled to no relief, so no evidentiary hearing is

necessary to rule on the Motion. *See Davis v. United States*, Nos. 3:07-CV-1995-P; 3:01-CR-

0323-P (03), 2009 WL 3488052, at *9 (N.D. Tex. Oct. 28, 2009); *Peralta-Ramirez*, 2008 WL

4630369, at *11. The Court accordingly denies Chapman's request for a hearing.

### E.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, Chapman must obtain a certificate of appealability before

appealing this Order. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Hallmark v. Johnson*,

118 F.3d 1073, 1076 (5th Cir. 1997). "A certificate of appealability may issue . . . only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). This requires the petitioner to demonstrate "that reasonable jurists could debate

whether . . . the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at

336. "A district court may deny a certificate of appealability, sua sponte, without requiring

further briefing or argument." *Peralta-Ramirez*, 2008 WL 4630369, at *12 (citing *Alexander v.

Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)). For the reasons stated above, jurists of reason

would not debate the merits of any of Chapman's claims, so the Court sua sponte denies

Chapman a certificate of appealability. *See id.* (citing *Alexander v. Johnson*, 211 F.3d at 898).

## III.    CONCLUSION

It is therefore **ORDERED** that the Motion, ECF No. 357, EP-09-CR-02453-KC, is

hereby **DENIED**.

**IT IS FURTHER ORDERED** that the corresponding civil action, EP-14-CV-62-KC, is

hereby **DISMISSED WITH PREJUDICE.**  The Clerk shall close the civil case. The Court shall

issue a final judgment separately.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED**.

**SIGNED this 13**[th] **day of May, 2015.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE